Eastern District of Kentucky
**FILED**

JAN 1 6 2007

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-33-KSF

CHARLES ALLEN SMITH,                                                                   PETITIONER

V.                          **PROPOSED FINDINGS OF FACT
AND RECOMMENDATION**

PATTI WEBB, Warden,                                                                   RESPONDENT

\* \* \* \* \*

## I. INTRODUCTION

On January 18, 2006, petitioner Charles Allen Smith, *pro se*, filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, concerning his conviction in Fayette Circuit Court on

or about February 24, 2003. On March 17, 2006, the Respondent filed her answer to the petition and

moved to dismiss, or in the alternative, for summary judgment.[1] Petitioner requested and was given

an extension of time to and including December 28, 2006, in which to respond to respondent's

motion to dismiss, or alternatively, for summary judgment; however, petitioner filed no response,

and the time for responding thereto has expired. Thus, this matter is ripe for review.

In accordance with local practice, this matter was referred to the undersigned Magistrate

Judge for consideration pursuant to 28 U.S.C. § 636(b). See Rule 10, Rules Governing Section 2254

Cases in the United States District Courts; Fed.R.Civ.P. 72(b).

## II. DISCUSSION

### A.     Standard of Review

This is a pro se petition, and, as such, the Magistrate Judge is mindful that it is held to less

stringent standards than those drafted by attorneys. See Cruz v. Beto, 405 U.S. 319 (1972); Haines

---

[1] Along with her motion to dismiss or for summary judgment, the Respondent also filed a
five-volume Appendix (hereafter "A") consisting of (1) relevant portions of the state court
record, (2) the briefs filed in the Kentucky Supreme Court in reference to the direct appeal; and
(3) the Kentucky Supreme Court's opinion affirming petitioner's conviction.

v. Kerner, 404 U.S. 519 (1972).  The allegations in pro se petitions must be taken as true and construed in favor of the Petitioner.  See Malone v. Colyer, 710 F.2d 258, 260 (6th Cir. 1983).

**B.     Prerequisites for Federal Habeas Corpus Review**

In order to grant relief in a proceeding pursuant to 28 U.S.C. § 2254, the court must find that certain prerequisites for granting relief are present.  If these prerequisites are not met, the court must dismiss the petition without addressing its merits.  Specifically, the court must find that:  (1) petitioner is in "custody"; (2) petitioner has exhausted the remedies available to him in state court; and (3) petitioner did not waive or forfeit the right to present a particular issue by failing to follow state court rules to ensure that the state courts would review that issue on appeal.

At the time petitioner filed this action, he was an inmate at the Green River Correctional Complex in Central City, Kentucky.  Thus, the first prerequisite is satisfied.  In the discussion below, the Magistrate Judge will determine whether the remaining two prerequisites are satisfied.

**C.     Factual and Procedural History**

On June 27, 2000, a grand jury of the Fayette Circuit Court returned an indictment against petitioner, charging him with the murder of Pamela Lee Polen.  See A Vol I, p. 1.  Petitioner pled not guilty to this charge and proceeded to trial.  On January 9, 2003, the jury found petitioner guilty of the murder of Pamela Lee Polen and fixed petitioner's sentence at fifty (50) years.  (A Vol. I, pp. 26-28).  On February 21, 2003, the trial court imposed a sentence of 50 years.  (A Vol. I, pp. 30-32).

Petitioner appealed his conviction to the Kentucky Supreme Court.  In an unpublished opinion rendered on October 21, 2004, the Kentucky Supreme Court affirmed petitioner's conviction . See Charles Allen Smith v. Commonwealth of Kentucky, Slip Opinion No. 2003-SC-0236-MR (unpublished). (A Vol. V, pp. 157-172).  The decision became final on November 11, 2004.

Petitioner filed his federal habeas petition on January 18, 2006.

**D.     Petitioner's claims**

As grounds for relief, petitioner raises the following claims: (1) the trial court erred by failing to conduct a *Daubert* hearing concerning the reliability of the "Lifescan" computer fingerprint system; (2) the trial court erred by denying his motion to suppress a taped statement he made to police officers after his arrest; (3) the trial court erred by failing to appoint an attorney to represent him who was not burdened by a conflict of interest; (4) the trial court judge erred by not recusing himself from petitioner's case which denied petitioner's right to a trial by an impartial, unbiased judge; (5) the trial court erred by denying his motion to dismiss the indictment; and (6) the trial court erred by permitting the introduction of evidence concerning petitioner's character and prior bad acts.

In response to the habeas petition, the respondent submits that petitioner's claims raised therein are without merit; therefore, respondent argues that the habeas petition should be dismissed and/or that he is entitled to summary judgment.

## Applicable law

In considering Petitioner's claims, the court is cognizant that the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 prohibits federal courts from granting writs of habeas corpus on claims previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

In *Harris v. Stovall*, 212 F.3d 940 (6th Cir. 2000), the Sixth Circuit recognized that by reason of the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000), issued on April 18, 2000, the standard of review that a federal habeas court must apply under § 2254(d) had been changed and that *Nevers v. Killinger*, 169 F.2d 352 (6th Cir. 1999), had effectively been overruled. Elaborating, the court in *Harris v. Stovall, supra*, explained:

> On April 18, 2000, the Supreme Court issued a decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), setting forth the

standard of review that a federal habeas court must apply under § 2254(d). The Court held that a decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 1523, 120 S.Ct. 1495. The Court further held that an "unreasonable application" occurs when "the state court identifies the correct legal principle from this Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 1522, 120 S.Ct. 1495.

In this case, the district court referred to our holding in *Harpster*, which simply noted the differing interpretations of § 2254(d) developing in our sister circuits, but found that the standard under § 2254(d) had not been met. See *Harpster*, 128 F.3d at 326-27. Subsequently, in *Nevers v. Killinger*, 169 F.3d 352 (6th Cir.), cert. denied, 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999), we found it appropriate to rely on the Fifth Circuit's "debatable among reasonable jurists" standard in *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir.1996), combined with the First Circuit's standard of "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," set forth in *O'Brien v. Dubois*, 145 F.3d 16 (1st Cir.1998). See *Nevers*, 169 F.3d at 361-62. Later, we reaffirmed this approach in *Maurino v. Johnson*, 210 F.3d 638, 643-44 (6th Cir.2000). However, the Supreme Court in *Williams* found that the Fourth Circuit's test--that a state court's application of federal law was "unreasonable" only if the court had applied federal law in a manner that reasonable jurists would all agree was unreasonable--was erroneously subjective, as the inquiry should be objective. The Court expressly disavowed the Fifth Circuit's "reasonable jurist" standard set forth in *Drinkard*. In light of the Supreme Court's decision in *Williams*, we find that *Nevers* and *Maurino* no longer correctly state the law on the issue of the appropriate standard under 28 U.S.C. § 2254(d). We must therefore rely solely on the Supreme Court's decision in *Williams* for the appropriate standard under § 2254(d).

*Harris v. Stovall*, *supra*, 212 F.3d at 942-43.

With this standard in mind, it is necessary to review the decision of the Kentucky Supreme Court on direct appeal and the decision of the Kentucky Court of Appeals on collateral review to determine if those adjudications:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (d)(2).

1.    **Failure to conduct a *Daubert* hearing regarding the reliability of the "Lifescan"
      computer fingerprint system**

   Petitioner claims that the trial court erred by permitting the Commonwealth to introduce

fingerprint evidence from the "Lifescan" computer fingerprint system without first conducting a

*Daubert* hearing to establish the scientific reliability thereof.  Petitioner raised this same claim on

direct appeal.

   In considering this claim on appeal, the Kentucky Supreme Court analyzed this claim, as

follows:

> Appellant first claims that fingerprint evidence was improperly admitted without
> proof of the reliability of the electronic method of fingerprint acquisition.  Appellant
> claims that the "Lifescan" method of taking fingerprints is not proven reliable, and
> the trial court should have ordered a <u>Daubert</u> hearing to determine reliability before
> admitting the evidence.  We find no reversible error.
>    While investigating the scene of the crime, two fingerprints were found on a
> Popov vodka bottle and one fingerprint was found on the scissors imbedded in Ms.
> Polen's neck.  Following his arrest, Appellant's fingerprints were taken by Fayette
> County Detention Center Corrections Officer Diane Bell, using the Lifescan method.
> Lifescan is a computer application that takes fingerprints by moistening the fingers
> with water and rolling them over a computer scanner in order to generate a
> fingerprint.  Appellant's fingerprints were then sent to the Automated Fingerprint
> Identification System ("AFIS"), maintained by the Kentucky State Police as required
> by KRS 17.180.  When a fingerprint is scanned into the AFIS system, the computer
> compares the given print with archived fingerprints.  AFIS then provides a candidate
> list of the top fifty fingerprint matches, to be used for comparison purposes.  The
> print retrieved from the vodka bottle returned a list of candidates that included
> Appellant.  (An ink method fingerprint had been obtained from Appellant following
> a 1990 arrest; that print had been submitted to AFIS prior to this crime.)  Stanley
> Slonina, supervisor of the AFIS system, testified that he conducted the comparison
> of fingerprints.  After the defense challenged the admissibility of the Lifescan
> fingerprint method, Slonina further testified that he had conducted a comparison not
> only between the latent print and the Lifescan print, but also between the latent print
> and the 1990 ink fingerprint card.
>    Without determining that the trial court erred in admitting testimony concerning
> the Lifescan fingerprints, we are of the opinion that such error would have been
> harmless and therefore does not require reversal.  RCr 9.24.  An error is considered
> harmless or non-prejudicial when, upon review of the whole case, there is not a
> "substantial possibility that the result would have been any different" had the error
> not occurred.  <u>Commonwealth v. McIntosh</u>, Ky., 646 S.W.2d 43, 45 (1983).  Absent
> the alleged error of admitting the Lifescan testimony, it is highly unlikely that the
> result would have been any different in this matter.
>    First, the Lifescan fingerprint was not the only source of identification in this case.
> Slonina testified that he had conducted the fingerprint comparison using both the
> Lifescan print and the 1990 ink fingerprint card; both methods identified Appellant.
> Thus, even if the Lifescan fingerprint evidence were never admitted, the jury would
> have nonetheless heard the results of the ink fingerprint comparison.  The reliability
> of fingerprint identification and comparison conducted with ink cards has long been
> established in this state.  <u>Shelton v. Commonwealth</u>, 280 Ky. 733, 134 S.W.2d 653,

657 (1939); see also Johnson v. Commonwealth, Ky., 12 S.W.3d 258, 262 (1999). Second, Appellant overstates the importance of the fingerprint identification to the Commonwealth's case. Though denying involvement in the murder, Appellant had already admitted to Detective Richmond that he brought the Popov vodka bottle into Ms. Polen's apartment and that he had picked up the scissors in question at one point. Those statements were admitted at trial. Therefore, the revelation that Appellant's fingerprints were found on the vodka bottle and on the scissors was hardly pivotal to the prosecution's case. For these reasons, we are not persuaded that the absence of the alleged error would have resulted in a different result in this case and thus reversal is not warranted.

Charles Allen Smith v. Commonwealth of Kentucky, 2003-SC-0236-MR, October 21, 2004 (unpublished), pp. 2-4 (A Vol. V, pp. 158-160).

Upon review of the state court record, the Magistrate Judge concludes that the Kentucky Supreme Court correctly concluded that any error committed by the trial court by not conducting a *Daubert* hearing concerning the reliability of the Lifescan computer fingerprint system was only harmless error. The conclusion is based on the fact, as noted by the Kentucky Supreme Court, that petitioner admitted to Detective Richmond that he was in the victim's apartment, that he brought the Popov vodka bottle into the victim's apartment, and that he had picked up the scissors in question. Thus, in view of these statements from petitioner, the fingerprint evidence was not crucial to the Commonwealth's case, since the Commonwealth established, through petitioner's own statements, that he was inside the victim's apartment. In short, since the fingerprint evidence was not pivotal in establishing petitioner's presence at the scene of the crime, and since the Commonwealth offered other evidence to establish petitioner's presence inside the victim's apartment, the Magistrate Judge concurs with the Kentucky Supreme Court that any error that occurred was harmless error because petitioner has not established  that the outcome of his trial would have been any different in the absence of the fingerprint evidence.

Consequently, the Magistrate Judge concludes that Petitioner has not established that the decision of the Kentucky Supreme Court concerning the trial court's failure to conduct a *Daubert* hearing regarding the reliability of the Lifescan computer fingerprint system (a) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate

Judge concludes that Petitioner is not entitled to federal habeas relief on this claim.

**2.     Denial of his motion to suppress a taped statement he made to police officers after his arrest**

Petitioner also claims that the trial court erred by denying his motion to suppress a taped

statement he made to police officers on April 25, 2000, following his arrest on a warrant, and that

the Kentucky Supreme Court also erred in finding that the *Miranda* warning he was given was

adequate. Petitioner contends that the *Miranda* warning he received was inadequate because it did

not inform him that he had a right to consult with an attorney prior to questioning and thus, it was

not in substantial conformity with the requirements of *Miranda*.

In considering this claim on appeal, the Kentucky Supreme Court analyzed this claim, as

follows:

> Appellant's third claim of error concerns the trial court's denial of his motion to
> suppress statements given to police following his arrest. Appellant contends that the
> Miranda warnings provided to him were constitutionally defective, as they did not
> adequately inform him that he could consult with an attorney prior to police
> questioning. Appellant concedes that he was informed of his right to have an
> attorney present during questioning, but argues that the warnings did not sufficiently
> advise him that he could consult with an attorney prior to questioning. Upon review,
> we conclude that the requirements of Miranda were fulfilled and, therefore, the trial
> court did not err in admitting Appellant's recorded statements.
>
>     The standard for appellate review of a trial court's decision on a suppression
> motion following a hearing is twofold. First, we must determine whether the factual
> findings of the trial court are supported by substantial evidence. If so, we must then
> determine if the trial court violated the rule of law in applying it to the established
> facts. Adcock v. Commonwealth, Ky., 967 S.W.2d 6, 8 (1998); RCr 9.78.
>
>     Here, the trial court entered a factual finding determining that Appellant had been
> read his Miranda rights. Detective Richmond testified that, prior to questioning, he
> informed Appellant of his Miranda rights. When a tape recorder was started to
> memorialize Appellant's statement, Detective Richmond again informed Appellant
> of his Miranda rights. On the tape, Detective Richmond informs Appellant:
>
>> You know that I am a police officer. You have got a right to remain
>> silent. Anything you tell me can be used against you in a court of
>> law. You have got a right to have an attorney present here during
>> questioning. If you cannot afford one, one will be appointed for you
>> by the court. Ok, now, if you decide you want to talk to me right
>> now, and at some point you don't want to talk anymore, just tell me
>> and I'll not get upset or anything like that, we will just end the
>> interview. Ok, you understand all that?
>
>     Detective Richmond further testified at the suppression hearing that Appellant
> appeared to understand his rights, and that at no time did Appellant indicate a desire

to end the interrogation. We thus conclude that the trial court's finding that Appellant was advised of his <u>Miranda</u> rights prior to questioning was based on substantial evidence.

Therefore, we must next determine if Detective Richmond's warnings to Appellant were sufficient to satisfy the requirements of <u>Miranda</u>. In determining whether an adequate warning was delivered prior to interrogation, it must be restated that <u>Miranda</u> warnings may be given in various forms, and that "no talismanic incantation [is] required to satisfy its strictures." <u>California v. Prysock</u>, 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696, 701 (1981) (<u>per curiam</u>). Rather, the relevant inquiry upon appellate review is not whether the <u>Miranda</u> warnings were given according to a precise formulation, but whether the warnings reasonably conveyed to the suspect his constitutional rights. <u>Duckworth v. Evans</u>, 492 U.S. 195, 202, 109 S.Ct. 2875, 2879, 106 L.Ed.2d 166 (1989).

Here, we conclude that the warnings given by Detective Richmond to Appellant prior to questioning sufficiently apprised Appellant of his constitutional rights. Appellant was read his rights twice before the interrogation began, and both times indicated that he understood them. Appellant was specifically informed of his right to have an attorney appointed and present during the questioning; Detective Richmond also expressly informed Appellant of his right to halt the interrogation at any time. We believe that these two warnings, given simultaneously, essentially informed Appellant that he could consult with an attorney at any time, even before questioning. The warnings provided an adequate and understandable appraisal of Appellant's rights, and did not materially mislead Appellant in any way. <u>See</u> <u>United States v. Caldwell</u>, 954 F.2d 496, 504 (8th Cir. 1991). There is no indication that Appellant was coerced or that his statements were made involuntarily. Therefore, Appellant's motion to suppress was properly rejected.

<u>Charles Allen Smith v. Commonwealth of Kentucky</u>, 2003-SC-0236-MR, October 21, 2004 (unpublished), pp. 6-8 (A Vol. V, pp. 162-164).

Upon review of the state court record, the Magistrate Judge concurs with the Kentucky Supreme Court's analysis of this claim and concludes that the Kentucky Supreme Court correctly held that the warnings given by Detective Richmond to petitioner prior to questioning sufficiently informed petitioner of his constitutional rights and that there was no violation of *Miranda*. It is clear from the statement Detective Richmond read to petitioner prior to questioning him that petitioner was informed that he had the right to remain silent, that anything he said could be used against him in a court of law, that petitioner had the right to have an attorney present during questioning, that if petitioner could not afford to retain counsel, the court would appoint an attorney to represent petitioner, and that if petitioner elected to proceed with being questioned by Detective Richmond, but later decided to end the interrogation, he was free to do so at any time during the interrogation.

Consequently, the Magistrate Judge concludes that Petitioner has not established that the decision of the Kentucky Supreme Court concerning the admission of petitioner's tape-recorded

statements to the police following his arrest (a) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge concludes that petitioner is not entitled to federal habeas relief on this claim.

**3.     Failure to appoint an attorney to represent him who was not burdened by a conflict of interest**

Petitioner also claims that the trial court erred by failing to appoint an attorney to represent him who was not burdened by a conflict of interest.

This same claim was raised on direct appeal; however, on appeal, petitioner challenged the validity of his waiver of counsel, rather than focusing on the trial's court's failure to appoint him conflict-free counsel. In considering this claim on appeal, the Kentucky Supreme Court analyzed this claim, as follows:

> Appellant next challenges the validity of his waiver of counsel. At a pre-trial hearing, Appellant moved to dismiss his counsel and represent himself. A lengthy colloquy followed, and Appellant's motions were ultimately granted. Appellant now argues that the trial court did not sufficiently question him regarding his waiver of counsel, thereby rendering the waiver invalid. We disagree.
> The fundamental right to counsel provided by the Sixth Amendment implies the right to represent oneself. Faretta v. California, 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 574 (1975). To be valid, the waiver must be entered knowingly and intelligently. Id. The Kentucky Constitution extends somewhat further than the United States Constitution, by explicitly guaranteeing the criminal defendant the right to be heard "by himself and counsel." Ky. Const. § 11. In Kentucky, a waiver of counsel is ineffective unless the trial court has fulfilled a three-part duty: (1) the trial court must hold a hearing at which the defendant testifies regarding whether the waiver is knowing, voluntary, and intelligent; (2) the defendant must be warned by the trial court of the "hazards arising from and the benefits relinquished" by the waiver of counsel; and (3) the trial court must enter a finding on the record that the waiver is knowing, voluntary, and intelligent. Hill v. Commonwealth, Ky., 125 S.W.3d 221, 226 (2004). These duties remain in place even in situations where, as here, stand-by counsel is retained. Id.
> Here, the trial court fulfilled the three-pronged requirement set forth in Hill. First, a hearing was held on Appellant's motion to dismiss his counsel and proceed pro se, at which Appellant testified under oath. The record of this hearing overwhelmingly supports the conclusion that Appellant's waiver of counsel was knowing, voluntary, and intelligent. At the outset, it should be noted that Appellant prepared in advance a written motion to dismiss counsel and proceed pro se. On no less than six occasions during the hearing, Appellant unequivocally stated his desire to waive counsel and to represent himself. Appellant was questioned extensively about his education, his familiarity with the procedural aspects of a trial, his understanding of criminal law, and his ability to effectively conduct a defense. The trial court inquired

specifically as to Appellant's understanding of subpoenas, various types of motions, suppression rules, mistrial, jury instructions, and the voir dire process. Appellant replied to each question without even the slightest hint of hesitation or doubt, repeatedly expressing his desire to represent himself, and even noting his intention to appeal to this Court should the motion be denied.

Appellant asserts that his waiver was not voluntary, arguing that he was presented with a "Hobson's choice": that is, to represent himself or to be represented by incompetent counsel. According to Appellant, his understanding of the situation as a "Hobson's choice" and the trial court's failure to question his underlying motivation for the waiver renders it involuntary and thus constitutionally infirm. We do not agree. In the twenty-two month period between Appellant's arraignment and the Faretta hearing, Appellant was appointed eight different attorneys by the trial court. All but one were dismissed at Appellant's request, who apparently was convinced that each attorney was either colluding with the Commonwealth, incompetent, or unwilling to follow his orders. There is nothing in the record to support any of these allegations aside from Appellant's own bare accusations. Nonetheless, it is clear that Appellant conducted a relentless campaign in the trial court against every attorney appointed to him based on the firmly held, though unfounded, belief that each was a "liar." We are not persuaded that Appellant's waiver was involuntary simply because it was based on this seemingly irrational conviction. The only conclusion supported by the record is that Appellant made a deliberate and voluntary decision borne out of his persistent refusal to accept any appointed attorney. We find no error in the trial court's identical conclusion.

Satisfying the second prong of the Hill requirements, the trial court then discussed with Appellant the dangers of representing oneself, particularly in a criminal proceeding, the effect his naivete of the law might have on future grounds for appeal, and the potential consequences of choosing to dismiss experienced counsel. Furthermore, Appellant's own appointed counsel addressed the complexity of a murder trial, and the immeasurable advantage to be gained by trained representation. In response to questions or statements made by Appellant, the trial court clarified various points of law and warned Appellant that the trial court had no duty to "guide" him through the trial.

Finally, the trial court entered specific findings of fact on the record, concluding that Appellant was competent to represent himself and that his waiver of counsel was valid. Upon review of the record, we conclude that the trial court fulfilled its duties as set forth in Faretta and Hill, and that Appellant's waiver of counsel was knowing, voluntary, and intelligent.

Charles Allen Smith v. Commonwealth of Kentucky, 2003-SC-0236-MR, October 21, 2004 (unpublished), pp. 8-10 (A Vol. V, pp. 164-166).

Upon review of the state court record, the Magistrate Judge concurs with the Kentucky Supreme Court's analysis of this claim and concludes that the Kentucky Supreme Court correctly determined that the trial court conducted the three-part test it was required to fulfill to guarantee that petitioner fully understood the ramifications of his decision to waive his right to be represented by counsel at trial and that upon being advised thereof, petitioner knowingly, voluntarily, and intelligently waived his right to be represented by counsel and chose, of his own free will, to

represent himself at trial, with standby counsel. The record reflects that in the interim between petitioner's arraignment and the <u>Faretta</u> hearing, the trial court appointed eight different attorneys to represent petitioner and that petitioner was dissatisfied with seven of these attorneys, requesting that he be appointed new counsel for various reasons, *viz.,* the attorney was colluding with the Commonwealth, the attorney was incompetent, and/or the attorney was unwilling to follow his orders, none of which was supported by the record.

Consequently, the Magistrate Judge concludes that Petitioner has not established that the decision of the Kentucky Supreme Court concerning the waiver of petitioner's right to have counsel represent him at trial and/or the failure of the trial court to appoint him conflict-free counsel (a) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge concludes that petitioner is not entitled to federal habeas relief on this claim.

**4.      Failure of the trial judge to recuse himself**

Petitioner also claims that the trial judge erred by not recusing himself from petitioner's case which denied him his right to a trial by an impartial, unbiased judge.

This same claim was raised on direct appeal. The Kentucky Supreme Court analyzed this claim, as follows:

> In his fifth claim of error, Appellant argues that he was denied the right to an unbiased decision-maker when the trial judge refused to recuse himself. Appellant filed a motion to recuse that was denied following a hearing on the matter, the trial court finding no reason to require recusal. Appellant thereafter filed a petition with this Court seeking disqualification of the trial judge. That petition was denied as it failed to establish adequate grounds for the appointment of a special judge. Appellant now argues that the trial court abused its discretion in denying the motion for recusal. We disagree.
>      In his written motion seeking recusal, Appellant acknowledges his own "contemptuously loud and disrespectful" behavior, the "angry tirades" he delivered in court, and the "ill-will" he directed towards the trial judge. The underlying reason for this conduct seems to be Appellant's continual dissatisfaction with each of the eight attorneys appointed to defend him, and Appellant's firmly held belief that everyone - from the Commonwealth to the police and trial judge - was involved in a conspiracy against him. (It should be noted again that no substantiating evidence of misconduct was presented to the court.) As evidence of actual bias pursuant to

KRS 26A.015(2)(a), the Appellant points primarily to the trial court's apparent frustration with Appellant's behavior and to an instance when the trial judge had him forcibly removed from a pre-trial hearing following one of these rants. Additionally, as grounds for disqualification pursuant to KRS 26A.015(2)(e), Appellant surmises that, due to his own offensive behavior in court, it would be impossible for anyone to believe that the trial judge could proceed fairly and impartially.

"The burden of proof required for recusal of a trial judge is an onerous one." Stopher v. Commonwealth, Ky., 57 S.W.3d 787, 794 (2001). "A party's mere belief that the judge will not afford a fair and impartial trial is not sufficient grounds to require recusal." Webb v. Commonwealth, Ky., 904 S.W.2d 226, 230 (1995). The person seeking recusal must point to facts demonstrating bias or other reasons for disqualification of a trial judge. Foster v. Commonwealth, Ky., 348 S.W.2d 759, 760 (1961), cert. denied, 368 U.S. 993, 82 S.Ct. 613, 7 L.Ed.2d 530 (1962). Appellant has failed to meed the requisite burden. What Appellant cites as facts showing legal bias is, in actuality, merely speculation that his own disruptive and aggressive conduct made it impossible for the trial court to adjudicate impartially. That the trial court eventually tired of these rants and refused to allow Appellant to repeatedly impugn the integrity of the court and the attorneys is not evidence of actual bias. Rather, it is evidence of a trial judge attempting to maintain order and respect in his courtroom. This type of conjecture is insufficient to warrant recusal, and the trial court did not abuse its discretion in denying the motion.

Charles Allen Smith v. Commonwealth of Kentucky, 2003-SC-0236-MR, October 21, 2004 (unpublished), pp. 10-12 (A Vol. V, pp. 166-168).

Upon review of the state court record, the Magistrate Judge concludes that the Kentucky Supreme Court correctly determined that the trial court did not abuse its discretion in denying petitioner's motion to recuse and that petitioner's motion seeking recusal was based only on petitioner's speculation "that his own disruptive and aggressive conduct made it impossible for the trial court to adjudicate impartially." Id. As the Kentucky Supreme Court correctly pointed out, "[t]his type of conjecture is insufficient to warrant recusal, and the trial court did not abuse its discretion in denying the motion." Id.

Consequently, the Magistrate Judge concludes that petitioner has not established that the decision of the Kentucky Supreme Court concerning his claim that the trial judge erred in denying his motion to recuse the trial judge and to appoint a special judge (a) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge concludes that petitioner is not entitled to federal habeas relief on this claim.

**5.    Failure of the trial court to dismiss the indictment**

Petitioner also claims that the trial court erred by denying his motion to dismiss the

indictment on the grounds that Detective Richmond had given false testimony to the grand jury.

In considering this claim on appeal, the Kentucky Supreme Court analyzed this claim, as

follows:

> Appellant's final claim of error is that false testimony submitted to the grand jury
> regarding material facts required dismissal of the indictment. Appellant points to
> three pieces of allegedly false evidence. First, Detective Richmond testified to the
> grand jury that Appellant's fingerprints were found on the Popov vodka bottle, the
> scissors found in Ms. Polen's neck, and a CD case found on the floor of her
> apartment. At the subsequent suppression hearing before the trial court, Detective
> Richmond acknowledged that he was mistaken concerning the fingerprint found on
> the CD case and that Appellant's print was not found on the case. Second, before the
> grand jury, Detective Richmond testified that the keys to Ms. Polen's apartment were
> never located, despite the fact that he had stated in his case synopsis that the keys
> were in Ms. Polen's purse that was later found. A parallel argument is asserted with
> respect to some cash that was also located in Ms. Polen's purse. Third, Appellant
> maintains that the transcript of his statement was inaccurate because portions
> designated "unintelligible" had been later filled in with words that Appellant
> maintains he did not say. Appellant argues that the indictment is invalid because it
> was based, in part, on this allegedly false information presented to the grand jury.
>      A judgment of conviction may not be reversed on the grounds that there was not
> sufficient evidence before the grand jury to support the indictment. RCr 5.10.
> Moreover, "courts should not attempt to scrutinize the quality of sufficiency of the
> evidence presented to the grand jury." Commonwealth v. Baker, Ky. 11 S.W.3d 585,
> 588 (2000). Only when a defendant is able to demonstrate a "flagrant abuse of the
> grand jury process that resulted in both actual prejudice and deprived the grand jury
> of autonomous and unbiased judgment" should an indictment be dismissed. Id.
>      Appellant has failed to meet this heavy burden. Detective Richmond testified at
> the suppression hearing that he was mistaken concerning the fingerprint found on the
> CD case, and only later discovered the mistake when he received a latent print report
> from AFIS. With respect to Ms. Polen's keys and the approximately $600 in cash
> located in her purse, this assertion is of no consequence: though Detective Richmond
> was mistaken when he wrote in his case synopsis that the items had been found, the
> case synopsis was never read or entered into evidence at the grand jury proceedings.
> Furthermore, Detective Richmond actually testified at the grand jury proceedings that
> the keys and money were not found. Neither of these claims demonstrate[s] the
> requisite flagrant abuse of the grand jury process, nor do we believe that the grand
> jury was deprived of its autonomous judgment.
>      Finally, a determination with respect to Appellant's claim that the transcript of his
> statements to police contained errors is complicated because it is not clear from the
> record whether the grand jury was shown the transcript. Regardless, even if the
> allegedly erroneous transcript was presented to the grand jury, dismissal of the
> indictment would not have been warranted. The fact that the evidence in a case may
> have been contrary to the facts alleged in the indictment does not render the
> indictment defective; once an indictment has been returned, the sufficiency of the
> evidence is to be determined at trial. Russell v. Commonwealth, Ky.App., 992
> S.W.2d 871, 874 (1999). Therefore, the trial court properly denied Appellant's
> motion to dismiss the indictment.

<u>Charles Allen Smith v. Commonwealth of Kentucky</u>, 2003-SC-0236-MR, October 21, 2004 (unpublished), pp. 13-15 (A Vol. V, pp. 169-171).

Upon review of the state court record, the Magistrate Judge concludes that the Kentucky Supreme Court correctly determined that the trial court properly denied petitioner's motion to dismiss the indictment on the grounds that Detective Richmond had presented false testimony to the grand jury. The Kentucky Supreme Court pointed out the flaws in petitioner's claim in great detail.

Consequently, the Magistrate Judge concludes that petitioner has not established that the decision of the Kentucky Supreme Court concerning his claim that the trial judge erred in denying his motion to dismiss the indictment because false testimony had been presented to the grand jury (a) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge concludes that petitioner is not entitled to federal habeas relief on this claim.

**6.    The introduction of evidence concerning petitioner's character and prior bad acts**

Petitioner also claims that the trial court erred by permitting the introduction of evidence concerning petitioner's character and prior bad acts. In this claim, petitioner also alleges that the Commonwealth improperly used a fingerprint card from 1990 concerning his fingerprints for comparison and that the jury was informed of his 1990 problems with law enforcement.

In considering this claim on appeal, the Kentucky Supreme Court analyzed that portion of petitioner's claim regarding evidence of petitioner's character and bad acts, as follows:

> Appellant's sixth claim of error is that the testimony of Rebecca Coots contained inadmissible character evidence that prejudicially smeared his character. Prior to trial, Ms. Coots had prepared a statement. Before she took the stand at trial, Appellant approached the bench and argued that her statement contained inadmissible character evidence. The Commonwealth agreed and informed the court that Ms. Coots had been informed of the inadmissible portions of her statement and had been instructed to eliminate them from her testimony. The statement itself was not introduced.
>
> Specifically, Appellant objects to four statements made by Ms. Coots during cross-examination: (1) Ms. Coots stated that after learning of the murder, she saw Appellant at a gas station and that he left and "didn't pay for it"; (2) after answering a question concerning her statements to investigators, Ms. Coots called Appellant

14

"evil and conniving"; (3) when asked if she was on drugs at the time of her statement, Ms. Coots replied that she had smoked crack and that Appellant should be aware of that, as he had gotten her "hooked on crack"; and (4) in answering a question concerning a day when Appellant was at her apartment washing clothing, Ms. Coots interjected that Appellant had "gave [her] crabs."

Certainly, Ms. Coots' commentary was not responsive to any questions posed by Appellant, who conducted the cross-examination. However, notwithstanding the trial court's prohibition on these types of statements prior to Ms. Coots' testimony, no contemporaneous objection was entered to any of these statements nor did Appellant request an admonition. This issue is therefore unpreserved, as Appellant failed to make known to the trial court his objection or to request some form of relief. RCr 9.22; see also Renfro v. Commonwealth, Ky., 893 S.W.2d 795, 796 (1995) (where trial court had ruled at a pre-trial hearing that lay testimony concerning the estimated speed of a vehicle would be inadmissible but the witness estimated the speed at 80 mph, such error was unpreserved as no contemporaneous objection was entered). This Court may review unpreserved errors and grant appropriate relief where manifest injustice resulted from the error. RCr 10.26. We do not believe the error complained of rises to the level of palpable error to warrant reversal. Considering the weight of the evidence presented against Appellant, particularly the compelling physical evidence, we find these minors errors to be harmless. RCr 9.24.

Charles Allen Smith v. Commonwealth of Kentucky, 2003-SC-0236-MR, October 21, 2004

(unpublished), pp. 12-13 (A Vol. V, pp. 168-169).

Additionally, the Kentucky Supreme Court analyzed that portion of petitioner's claim

concerning the use of a 1990 fingerprint card, claim, as follows:

Appellant raises a companion issue regarding the fingerprint testimony; Appellant claims that the 1990 fingerprint card should not have been admitted into evidence as it suggested to the jury that he had prior convictions and/or arrests. He argues that the archived fingerprint card amounts to KRE 404(b) evidence and should have been excluded. We find no error.

KRE 404(b) prohibits the introduction of evidence of other crimes, wrongs or acts "to prove the character of a person in order to show action in conformity therewith." Such evidence is admissible, however, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" KRE 404(b)(1). The burden rests on the Commonwealth to establish a proper basis before admitting evidence of collateral criminal activity, including a need for such evidence, and that its probative value outweighs its prejudicial effect. Bell v. Commonwealth, Ky., 875 S.W.2d 882, 889 (1994). "A ruling based on a proper balancing of prejudice against probative value will not be disturbed unless it is determined that a trial court has abused its discretion." Id. at 890.

We find no abuse of discretion. The 1990 fingerprint card was not introduced to prove Appellant's character; rather, it was necessary to rebut defense counsel's argument that the Lifescan fingerprint was unreliable and to establish identity. Furthermore, the trial court abrogated the potential for prejudice by disallowing any testimony concerning the circumstances surrounding the 1990 fingerprint card. It is also important to note that any possible prejudice that resulted from the introduction of the 1990 fingerprint card was rendered harmless due to Appellant's cross-examination of Detective Richmond, which occurred earlier in the trial. The Appellant introduced a copy of the criminal complaint against him and required Detective Richmond to read it to the jury; the criminal complaint included reference

to two previous charges. Thus, the trial curt did not abuse its discretion in concluding that the probative value of the 1990 fingerprint card outweighed any potential prejudice to Appellant.

Charles Allen Smith v. Commonwealth of Kentucky, 2003-SC-0236-MR, October 21, 2004 (unpublished), pp. 4-5 (A Vol. V, pp. 160-161).

Upon review of the state court record, the Magistrate Judge concludes that the Kentucky Supreme Court correctly determined that the trial court committed no error by allowing the introduction of the 1990 fingerprint card and that any errors concerning the gratuitous comments by Rebecca Coots during her testimony were harmless errors.

Consequently, the Magistrate Judge concludes that petitioner has not established that the decision of the Kentucky Supreme Court concerning his claim that the trial judge erred by permitting the introduction of evidence concerning petitioner's character and prior bad acts, including the reference to the 1990 fingerprint card, (a) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (b) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. For these reasons, the Magistrate Judge concludes that petitioner is not entitled to federal habeas relief on this claim.

### III. CONCLUSION

For all of the reasons stated above, based on a review of the state court record and the applicable case law relevant to federal habeas corpus petitions, the Magistrate Judge concludes that petitioner's habeas corpus petition should be denied.

Accordingly, **IT IS RECOMMENDED** that respondent's motion to dismiss, or alternatively, for summary judgment [DE #8] be **GRANTED**, that petitioner's habeas petition be **DENIED**, and that this action be **DISMISSED** and **STRICKEN** from the docket.

The Clerk of the Court shall forward a copy of the Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Proposed Findings of Fact and Recommendation with the District Court or else waive the right to raise objections in the Court of

Appeals.  28 U.S.C. section 636(b)(1)(B); <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir. 1984), <u>affirmed</u>, 474 U.S. 140 (1985); <u>Wright v. Holbrook</u>, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Rule 8(b)(3), Rules Governing Section 2254 Cases in the United States District Courts; Fed.R.Civ.P. 6(e).  A party may file a response to another party's objections within ten (10) days after being served with a copy thereof.  Fed.R.Civ.P. 72(b).

This _16th_ day of January, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE